UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


WANDA FAYE BATTON

CIVIL ACTION

VERSUS

NUMBER 11-632-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


**RULING ON SOCIAL SECURITY APPEAL**

Plaintiff Wanda Faye Batton brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") benefits.

For the reasons which follow the Commissioner's decision is affirmed.

**Standard of Review**

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the relevant legal standards.[1] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If

---

[1] It is well-established that in cases brought under § 405(g) evidence outside the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).

substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for disability benefits. 20 C.F.R. § 416.920. In the five step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment(s), (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations, (4) the impairment(s) prevents the claimant from performing past relevant work, and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. If the claimant shows at step four that she is no longer capable of performing her past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, *supra*. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

Effective October 25, 1999, obesity was deleted as a listed

3

impairment. *Weary v. Astrue*, 288 Fed.Appx. 961 (5th Cir. 2008); *Wooten v. Apfel*, 108 F.Supp.2d 921, 924 (E.D.Tenn. 2000); *Allen v. Apfel*, 2001 WL 253120 (E.D.La., Mar. 14, 2001). However, the Social Security regulations require that obesity and its effects be considered in determining whether a claimant meets the listings related to the musculoskeletal, respiratory and cardiovascular systems, and also be considered in combination with other impairments throughout the sequential disability analysis. *See*, Listing 1.00.Q.; Listing 3.00.I.; Listing 4.00.F; Social Security Ruling (SSR) 02-01p, Evaluation of Obesity, 2000 WL 628049 (S.S.A. Sept. 12, 2002).

**Background**

Plaintiff graduated from high school and after graduation went to vocational school where she completed the program for training as a medical administrative assistant. AR pp. 30, 107, 153. Plaintiff then worked in various clerical, customer service, data entry and personal care positions until the alleged onset of her disability in 2006. AR pp. 30-33, 91-113, 120-25. Plaintiff applied for SSI benefits in December 2008, and claimed that she is disabled and has been unable to work since April 2006 due to obesity, diabetes, knee pain, edema, high blood pressure, and acid reflux. AR pp. 35-40, 147. Plaintiff's application was denied, and the plaintiff requested a hearing before an administrative law judge ("ALJ") R pp. 53-60. The hearing was held on March 16,

4

2010.  Plaintiff was 44 years of age at the time of the ALJ hearing.  At the hearing the ALJ and the plaintiff's representative obtained testimony from the plaintiff and a vocational expert.  AR pp. 27-52.

The ALJ issued an unfavorable decision on April 16, 2010.  AR pp. 13-23.  At the second step, the ALJ reviewed all the evidence related to the plaintiff's alleged impairments and concluded that the plaintiff had the following combination of severe impairments - degenerative joint disease of the knees, diabetes mellitus and morbid obesity.  AR p. 18.  However, the ALJ concluded that the plaintiff's acid reflux and hypertension were not severe under the standard of *Stone v. Heckler*.[2]  AR pp. 18-19.  At step three, the ALJ found that the plaintiff's combination of impairments did not meet or medically equal one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1.[3]

Before proceeding to the fourth step the ALJ had to determine the plaintiff's residual functional capacity ("RFC").  The ALJ found that the plaintiff's severe impairments left her with a residual functional capacity to perform the exertional demands of

---

[2] 752 F.2d 1099 (5th Cir. 1985).

[3] At the third step the medical evidence of the claimant's impairments are compared to a list of impairments presumed to be severe enough to preclude any gainful activity.  If a claimant's impairments match or equal one of the listed impairments, he or she qualifies for benefits without additional inquiry.  *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000).

5

sedentary work as defined in the regulations.  AR p. 19.  The ALJ also included a nonexertional limitation in his finding - plaintiff must be allowed to use a cane while standing and walking.  With an RFC for sedentary work, and the need to use a cane for standing and walking, the ALJ asked the vocational expert, Thomas Lefate, whether the plaintiff would be able to engage in any of her past employment.  The expert testified that the plaintiff could do her previous dispatch or data entry work.  AR pp. 47-50.  Based on Lefate's testimony, the ALJ also made a finding that the plaintiff could do other work - stock and material handler, hand packager, and general office clerk. The ALJ cited this evidence in his written decision, and concluded that the plaintiff was not disabled because she was capable of doing past work and also able to make a successful adjustment to alternative work that exists in significant numbers in the national economy.  AR pp. 22, 48-50.

Plaintiff filed a request for review by the Appeals Council. The Appeals Council considered the plaintiff's arguments but found no basis to review the ALJ's findings.  On August 1, 2011 the Appeals Council denied the plaintiff's request for review and the ALJ's findings became the final decision of the Commissioner.  AR pp. 1-8.  Plaintiff then filed her petition for judicial review.

## Analysis

Plaintiff argued that three errors were made by the ALJ which require reversal and remand for a proper evaluation of her claim

for SSI benefits: (1) the ALJ did not properly evaluate the impact of obesity on her ability to work; (2) the ALJ did not properly apply the nonseverity standard of *Stone v. Heckler* and did not consider the effects of all impairments on her ability to work; and, (3) the ALJ failed to make it clear at what step of the disability analysis he determined that she was not disabled.

Careful review of the administrative record as a whole demonstrates that these claims of reversible error are without merit, and that substantial evidence supports the Commissioner's final decision that the plaintiff is not disabled.

### 1. The ALJ properly evaluated the effects of obesity on the plaintiff's ability to work.

Citing Social Security Ruling 02-01p, the plaintiff argued the ALJ's findings regarding her weight and its effects on her daily activities and ability to work were inconsistent with the record and not supported by substantial evidence.[4] Plaintiff specifically argued that the ALJ incorrectly calculated her body mass index ("BMI") and this error caused the ALJ to seriously underestimate the severity of the obesity impairment.

Neither SSR 02-01p nor the record support the plaintiff's arguments. First, under SSR 02-1p the impact of obesity on an individual's functioning must be considered in determining the

---

[4] The ALJ cited SSR 02-01p in his written decision. AR pp. 19-20.

7

severity of the obesity and to what extent, if any, it affects the individual's residual functional capacity. But it also specifically states:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes.

Thus, even if the ALJ incorrectly calculated the plaintiff's BMI, the record does not support the conclusion that this error resulted in the ALJ underestimating the severity of the plaintiff's obesity.[5] The ALJ's written decision demonstrates that the ALJ reviewed all the evidence and in fact found that the plaintiff's condition of morbid obesity was one of her severe impairments. AR

---

[5] Plaintiff also stated that the ALJ incorrectly noted that her weight was 358 pounds. AR p. 20, ¶ 4. This argument is also unsupported. The weight of 358 pounds was the weight stated in the January 21, 2009 report of Dr. Levie Johnson. AR p. 221. Moreover, the ALJ did not ignore the hearing testimony with regard to weight. On the same page of the decision cited by the plaintiff, the ALJ noted the plaintiff's testimony about her weight being 375 pounds, down from 385 pounds. AR p. 20, ¶ 1, 37-38.
 The medical records from 2008 through 2011 recorded weights ranging from 368 to 394 pounds. AR pp. 207, 213-14, 217-19, 246, 254, 259, 263-64, 268, 270, 280, 286. Again, even if there was some error in the ALJ's statement of the plaintiff's weight, the plaintiff did not show that she was prejudiced by it. Under SSR 02-01p, no specific weight or BMI necessarily equates to a severe impairment or limitation of function, and here the ALJ found that morbid obesity was one of the plaintiff's severe impairments, resulting in a restriction to sedentary work. Therefore, to the extent there was any error, it was a harmless error. Procedural perfection is not required in administrative proceedings so long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

8

Case 3:11-cv-00632-SCR   Document 14   02/11/13   Page 8 of 14

p. 18. After this step two determination, in accordance with SSR 02-01p and the regulations, the ALJ properly considered the effects of this impairment on the plaintiff's ability to work. He found that the obesity, along with the plaintiff's other impairments, affected the plaintiff's capacity to perform work-related activities at the light, medium or greater work level, but not to the extent of precluding sedentary work. The ALJ evaluated the evidence, including the plaintiff's testimony, but found the consultative reports of Dr. Levie Johnson and Dr. Charles Lee to be more credible.

As summarized by the ALJ, Dr. Johnson's report showed that the plaintiff stated she could dress and feed herself independently, drive, and visit family and friends. He reported that the plaintiff was able to get on and off the exam table, dress and undress independently. Plaintiff also had a normal range of motion in her back, neck and all joints, with no tenderness, swelling or redness, and normal function of her hands and arms, including reaching, pulling, pushing, gripping, grasping and handling. However, because of the plaintiff's diabetes, obesity and knee problems he estimated that the plaintiff could not lift over ten pounds and was restricted in her ability to sit for prolonged periods of time, stand, walk, squat, crouch and stoop. AR pp. 20-21, 220-27. Dr. Charles Lee, orthopedist and disability determinations medical consultant, also reported in his assessment

9

of the plaintiff's residual functional capacity that despite the plaintiff's severe impairments, she had the ability to push/pull, sit, stand, walk, lift and carry at the sedentary level.[6] The ability to lift ten pounds is also consistent with the plaintiff's own estimate of her ability to lift.[7] AR pp. 42, 228-36. The ALJ's careful review of the evidence is also shown by the fact that he credited the plaintiff's testimony and that of her treating source, by finding that the plaintiff must be allowed to use a cane for standing and walking. AR pp. 19-22, 39, 211. In doing so, the ALJ partially rejected the opinion of Drs. Johnson and Lee. AR pp. 20-21, 224-26, 236.

Thus, it is apparent from the ALJ's decision and the record as a whole that the ALJ applied the proper legal standards in evaluating the plaintiff's obesity impairment and its effects on her ability to work. It is equally apparent from the above analysis that his findings on these issues were supported by substantial evidence.

---

[6] RFC is defined in the regulations as the most a claimant can still do in a work setting, despite the physical and/or mental limitations caused by the claimant's impairments and any related symptoms. 20 C.F.R. § 416.945(a).

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.20 C.F.R. § 416.967(a)(definition of sedentary work).

10

> **2. The ALJ properly applied the standard of *Stone v. Heckler* and evaluated the effects of all impairments on the plaintiff's ability to work.**

The ALJ addressed the plaintiff's acid reflux and hypertension impairments and related symptoms, and found that these impairments were non-severe. Plaintiff acknowledged that in his analysis the ALJ cited the standard of *Stone v. Heckler*, but argued that the ALJ's statement immediately following the citation to *Stone* demonstrates that he imposed a higher standard of proof on the claimant.[8] Plaintiff also argued that the ALJ improperly excluded the nonsevere impairments from his evaluation of her limitations.

Neither of these arguments is supported by the record. In his written decision the ALJ properly cited to *Stone* and the "slight abnormality...minimal effect" standard that it imposes. AR p. 19. The ALJ's analysis of the evidence related to these impairments demonstrates that he applied this standard and not a higher standard. For example, the ALJ noted the evidence showing the plaintiff experienced acid reflux, but stated that the evidence also showed that the test results from an endoscopy were normal and the plaintiff's doctors told her to take over-the-counter medication for her symptoms. Similarly, the ALJ examined the

---

[8] The sentence the plaintiff pointed to is the following: "A severe impairment is one that significantly limits an individual's physical or mental ability to perform basic work activities." AR p. 19. Plaintiff failed to cite any portion of the ALJ's decision or the record to support the conclusory assertion that this sentence demonstrates the ALJ imposed a higher standard than *Stone*.

11

evidence related to the plaintiff's hypertension. He stated that the plaintiff was being effectively treated with medication, and there was no evidence of coronary disease or end organ damage. Finally, the ALJ explained that there was no evidence that any restrictions has been placed on the plaintiff because of these impairments.

In the absence of evidence that these conditions resulted in limitations in the plaintiff's ability to perform work-related activities, it was not error for the ALJ to conclude that the impairments were not severe and did not have an effect on the plaintiff's residual functional capacity. This evidence as well as the evidence cited above and the ALJ's analysis, show that he considered the combined effects of all the plaintiff's impairments, and his findings on these issues were supported by substantial evidence.

### 3. The ALJ did not commit error at step four or five of the disability analysis, and his findings at these steps were supported by substantial evidence.

Plaintiff argued that by making findings at step four and step five, it was not clear at which step the ALJ reached his decision. According to the plaintiff, by blurring the distinction between steps four and five the ALJ made it unlikely that the court could evaluate whether his ruling was supported by substantial evidence.

Plaintiff's argument is not factually or legally supported. Plaintiff cited no authority which states that the ALJ is

12

prohibited from making alternative findings.  Nor does anything in the record support the conclusion that the ALJ's analysis here hinders the court's ability to properly evaluate the presence or absence of substantial evidence.  Moreover, it is apparent from the ALJ's decision that he made alternative findings and the findings were supported by substantial evidence.  AR p. 22.

At step four the determination of whether a claimant can perform past relevant work may rest on either descriptions of past work as it was actually performed or as generally performed in the national economy.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  At the hearing the ALJ told the vocational expert, Lefate, to assume an individual with the plaintiff's RFC (sedentary work with the need to use a cane), and asked him whether that individual would be able to perform any of the plaintiff's past relevant work.[9]  The expert responded that such an individual could perform the jobs of data entry and dispatcher.  The ALJ further questioned Lefate as to the effects on his answer if the individual needed to alternate sitting, standing and walking for brief periods during the course of the work day.  Lefate answered that even with this added limitation there would be other jobs the plaintiff could perform - stock and material handler, hand packager, and general office worker.  AR pp. 47-50.

---

[9] The expert heard the plaintiff testify on the demands of her past relevant work.  AR pp. 31-34.

13

Therefore, it is apparent the expert's testimony supported the ALJ's finding that the plaintiff was not disabled at step four. To the extent the ALJ also made an alternative finding, the testimony obtained from the expert at the hearing also constitutes substantial evidence to support the conclusion that the plaintiff was not disabled because she could do other work that exists in significant numbers in the national economy.

## Conclusion

Accordingly, under sentence four of 42 U.S.C. §405(g), the final determination of the Commissioner of Social Security Michael J. Astrue, that plaintiff Wanda Faye Batton is not disabled and denying her application for supplemental security income (SSI) benefits, is affirmed. A judgment shall be entered dismissing this action.

Baton Rouge, Louisiana, February 11, 2013.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE